NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PARKWAY-KEW CORPORATION, a New Jersey corporation, | |
| Plaintiff, | Civ. No. 20-6044 |
| v. | **OPINION** |
| HARRIS MACHINE TOOLS, INC., a Texas corporation, and JEAN HARRIS, JR., jointly and severally, | |
| Defendants. | |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer filed by Defendants Harris Machine Tools, Inc. ("HMT") and Jean Harris, Jr. ("Harris") (collectively, "Defendants"). (ECF No. 12.) Plaintiff Parkway-Kew Corporation ("Plaintiff") opposes the Motion. (ECF No. 15.) The Court has decided the Motion based on the written submissions of the parties and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Defendants' Motion (ECF No. 12) is denied.

## BACKGROUND

### I. Factual Background

This case arises out of Plaintiff's purchase of a cylindrical grinder. Defendant HMT sells industrial equipment. (Harris Decl. ¶ 4, ECF No. 12-1.) Plaintiff's business operation involves

the grinding of hard coatings, such as tungsten carbide. (Compl. ¶ 21, ECF No. 1-2.) On October

29, 2019, Defendant HMT sent an e-mail to Eugene E. Klein, Jr., Plaintiff's Vice President of

Engineering, promoting for sale, among other things, a "Landis O.D. Cylindrical Grinder."

(Klein Decl. ¶¶ 1, 5, ECF No. 15-1.)[1] Defendant HMT sent the e-mail to approximately 6,000

other recipients. (Harris Decl. ¶ 11.) The e-mail described the grinder has having a "MAXIMUM

GRINDING WHEEL DIAMETER: 30 [INCHES]." (Harris Decl. Ex. A-1, ECF No. 12-2.)

Approximately one hour after the e-mail was sent, Mr. Klein contacted Defendant HMT

to inquire about the Landis Grinder. (Harris Decl. ¶ 12.) Defendant HMT's receptionist e-mailed

Defendant Harris, the president of Defendant HMT, with Mr. Klein's phone number. (*Id.* ¶¶ 1,

12.) Defendant Harris called Mr. Klein. (*Id.*) During that conversation, Mr. Klein requested a

quote for the Landis Grinder. (*Id.*)

On October 31, 2019, Defendant Harris e-mailed Plaintiff a quote. (*Id.* ¶ 13.) The quote

contained a link directing Plaintiff to financing through Direct Capital. (Klein Decl. Ex. B.) The

quote noted that "[a]ll transactions will be deemed made and governed by the laws of the State of

Texas, with payment in Houston, Harris County, Texas." (*Id.*) Defendant Harris also sent Mr.

Klein three emails with photos of the Landis Grinder. (Harris Decl. ¶ 13.)

After receiving the quote, Plaintiff arranged to purchase the grinder from Defendant

HMT for the quoted price of $49,500. (Compl. ¶ 15.) Plaintiff sought financing through Direct

Capital. (*Id.* ¶¶ 16–19.) On November 5, 2019, Defendant Harris received an e-mail confirming

that Plaintiff had paid for the grinder in full. (Defs.' Ex. A-7, ECF No. 12-4.) Because the

---

[1] Mr. Klein has received e-mails from Defendant HMT "for a long time before the transaction at issue," but he claims to be "almost certain [he] did not sign up for [Defendant] HMT's email distribution list." (Klein Decl. ¶ 7, ECF No. 15-1.)

grinder was in California at the time, Plaintiff arranged for a rigger to deliver it to New Jersey. (Klein Decl. ¶ 19.) After the sale, between November 12, 2019 and November 15, 2019, Defendant Harris and Mr. Klein exchanged e-mails regarding the size and weight of the Landis Grinder. (Harris Decl. ¶ 15.)

Plaintiff alleges that it purchased the Landis Grinder because it "could take a 30-inch diameter wheel." (Compl. ¶ 20.) Plaintiff uses thirty-inch-diameter wheels on its grinders because smaller wheels "fail to remove stock" after they wear down. (*Id.* ¶ 21.) When the Landis Grinder was delivered, however, Plaintiff discovered that it could only incorporate a twenty-inch-diameter wheel. (*Id.* ¶ 24.)

Defendant HMT is a Texas corporation with its principal place of business in Houston, Texas. (Harris Decl. ¶ 1.) Its twenty employees work in Houston, Texas. (*Id.* ¶ 4.) Defendant HMT does not have offices or property in New Jersey. (*Id.* ¶ 9.) From 2016 to 2019, Defendant HMT made two sales to customers in New Jersey, one of which was the sale at issue in this case. (*Id.* ¶ 10.) Defendant Harris lives in Texas. (*Id.* ¶ 3.) Plaintiff is a New Jersey corporation with its principal place of business in North Brunswick, New Jersey. (Compl. ¶ 1.)

## II.    Procedural History

Plaintiff filed the Complaint in the Superior Court of New Jersey in Middlesex County on April 7, 2020. (Compl. at 1.) Plaintiff alleges five counts: (1) violations of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.* (*id.* ¶¶ 28–38); (2) fraudulent misrepresentations (*id.* ¶¶ 39–46); (3) negligent misrepresentations (*see id.* ¶¶ 47–55); (4) breach of the implied warranty of fitness for a particular purpose (*id.* ¶¶ 56–61); and (5) rescission of the parties' agreement because of a mutual mistake of fact (*id.* ¶¶ 62–66).

Defendants removed the case to federal court. (ECF No. 1.) On June 8, 2020, Defendants

3

filed a Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer. (ECF No. 12.) Plaintiff filed an Opposition (ECF No. 15), and Defendants filed a Reply (ECF No. 16). Defendants' Motion is presently before the Court.

## LEGAL STANDARDS

### I.    Personal Jurisdiction

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing Fed. R. Civ. P. 4(e)). New Jersey's long-arm statute permits the exercise of personal jurisdiction "to the uttermost limits permitted by the United States Constitution." *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 698 (3d Cir. 1990). Therefore, for a New Jersey court to exercise jurisdiction over a non-resident defendant, the defendant must have "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations and internal quotations omitted). There are two types of personal jurisdiction: general and specific. *See Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014). "General jurisdiction is based upon the defendant's 'continuous and systematic' contacts with the forum and exists even if the plaintiff's cause of action arises from the defendant's non-forum related activities." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (citation omitted). "[S]pecific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities." *Id.*

When a defendant moves to dismiss a complaint for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, "the plaintiff bears the burden of showing that personal jurisdiction exists." *Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2007); *see*

4

*also Cerciello v. Canale*, 563 F. App'x 924, 925 n.1 (3d Cir. 2014) (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 (3d Cir. 1992)) (noting that the plaintiff bears the burden to demonstrate that personal jurisdiction is proper by a preponderance of the evidence). Where the court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller*, 384 F.3d at 97. Nevertheless, "[t]o meet [its] burden, [the plaintiff] must 'establish[ ] jurisdictional facts through sworn affidavits or other competent evidence.'" *Cerciello*, 563 F. App'x at 925 n.1 (quoting *Miller*, 384 F.3d at 101 n.6). "In other words, 'bare pleadings alone' are insufficient to withstand a motion to dismiss for lack of personal jurisdiction." *Id.* (quoting *Miller*, 384 F.3d at 101 n.6).

## II.     Motion to Transfer

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The decision to transfer a case under § 1404(a) rests within the sound discretion of the court. *In re United States*, 273 F.3d 380, 387 (3d Cir. 2001) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)).

When considering motions to transfer under § 1404(a), courts evaluate the "private interests" and "public interests" implicated by the statute. "Private interests" include (1) the plaintiff's original choice of venue; (2) the defendant's preference as to forum; (3) where the claim arose; (4) convenience to the parties in light of their financial and physical condition; (5) convenience to the witnesses, "but only to the extent that the witnesses may actually be unavailable for trial in one of the fora"; and (6) the location of books and records. *Jumara v.*

*State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citations omitted). "Public interests" include (1) "the enforceability of the judgment"; (2) "practical considerations that could make the trial easy, expeditious, or inexpensive"; (3) potential congestion in the two fora; (4) "the local interest in deciding local controversies at home"; (5) public policies of the fora; and (6) the familiarity of the judge with applicable state law in diversity cases. *Id.* at 879–80 (citations omitted). While "[t]he burden is on the moving party to establish that a balancing of proper interests weigh[s] in favor of the transfer," *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970), the moving party is "not required to show 'truly compelling circumstances for . . . change . . . [of venue, but rather that] all relevant things considered, the case would be better off transferred to another district,'" *In re United States*, 273 F.3d at 388 (citing *In re Balsimo*, 68 F.3d 185, 187 (7th Cir. 1995)).

## DISCUSSION

### I.    Personal Jurisdiction

#### A.    *General Jurisdiction*

A court may exercise general personal jurisdiction over a defendant whose affiliations with the state "are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 139 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." *Goodyear*, 564 U.S. at 924. "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler*, 571 U.S. at 137. "The exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in

6

that State.'" *BNSF Ry. Co. v. Tyrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler*, 571 U.S. at 139 n.19).

Defendants are not subject to general jurisdiction in New Jersey. Defendant HMT is a Texas corporation with its principal place of business in Texas. (Harris Decl. ¶ 1.) Defendant Harris resides in Texas. (*Id.* ¶ 3.) Therefore, the paradigmatic forum in which Defendants are subject to general jurisdiction is Texas, not New Jersey. Moreover, Plaintiff has not otherwise demonstrated that Defendant HMT's contacts with New Jersey are "so continuous and systematic" as to render it "essentially at home" in New Jersey. *See BNSF Ry.*, 137 S. Ct. at 1558. Defendant HMT has twenty employees who work in Texas; it does not have offices or property in New Jersey; and from 2016 to 2019, it made two sales to New Jersey customers. (Harris Decl. ¶¶ 4, 9, 10.)

    B.    *Specific Jurisdiction*

        1.    <u>Standard for Traditional Minimum Contacts Analysis</u>

"In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1781 (2017) (alteration in original) (quoting *Goodyear*, 564 U.S. at 919). Generally, "[t]he inquiry as to whether specific jurisdiction exists has three parts." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). "First, the defendant must have purposefully directed [its] activities at the forum. . . . Second, the litigation must arise out of or relate to at least one of those activities. . . . And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *Id.* (citations and internal quotations omitted).

To establish that a defendant "purposefully directed [its] activities" toward the forum state, the lawsuit "must arise out of contacts that the 'defendant *himself*' creates with the forum," *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)), not merely out of "defendant's contacts with persons who reside [in the forum]," *id.* at 285 (citing *Int'l Shoe*, 326 U.S. at 319). "[T]he plaintiff cannot be the only link between the defendant and the forum." *Id.*; *see also O'Connor*, 496 F.3d at 317 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (noting that "the 'unilateral activity of those who claim some relationship with a nonresident defendant' is insufficient").

### 2.     Purposeful Availment Requirement

Generally, "[i]nformational communications in furtherance of [a contract between a resident and a nonresident] do[ ] not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant]." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 152 (3d Cir. 1996) (citation omitted). Communications between parties over mail, telephone, and e-mail, however, factor into a court's minimum contacts analysis. *See Grant Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482–83 (3d Cir. 1993) (written correspondence and phone calls); *Gerald Chamales Corp. v. Oki Data Ams., Inc.*, 557 F. Supp. 2d 494, 499 (D.N.J. 2008) (in-person negotiations, phone calls, and e-mails); *Carrabba v. Morgat*, 2014 WL 229280, at *5 (D.N.J. Jan. 17, 2014) (e-mails, phone calls, and faxes). Ultimately, communications between parties, considered alongside other contacts, must reflect a "deliberate targeting of the forum" by the defendant. *Colvin v. Van Wormer Resorts, Inc.*, 417 F. App'x 183, 187 (3d Cir. 2011) (quoting *O'Connor*, 496 F.3d at 317).

8

Just as informational communications on their own do not amount to the requisite contacts for personal jurisdiction, "[t]he fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident." *Mellon Bank (E.) PSFS v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). "The requisite contacts, however, may be supplied by the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties." *Id.* (citing *Burger King*, 471 U.S. at 479).

The contacts between Plaintiff and Defendants were not merely informational communications and not merely a contract. Rather, the parties' contacts, considered as a whole, reflected Defendants' deliberate targeting of New Jersey. The Third Circuit's decision in *O'Connor* is instructive. In *O'Connor*, a Pennsylvania plaintiff sued a Barbados hotel after he slipped and fell while on vacation at the hotel. 496 F.3d at 316. The plaintiff and his spouse had visited the hotel once before on recommendations from friends and travel agents. *Id.* at 315. Between the plaintiff's two visits to the hotel, the hotel mailed seasonal newsletters to the plaintiff's home in Pennsylvania. *Id.* at 318. After the plaintiff booked his second trip, the hotel "mailed [the plaintiff] a brochure and traded phone calls with [him] for the purpose of forming an agreement to render spa services." *Id.* The Third Circuit held that the Pennsylvania district court had specific personal jurisdiction over the hotel. *Id.* at 325.

Like the Barbados hotel in *O'Connor*, Defendant HMT solicited and finalized a sale. Defendant HMT sent an e-mail to Mr. Klein to promote the sale of the Landis Grinder, and Defendants continued to pursue the sale following Mr. Klein's response. (*See* Harris Decl. ¶¶ 11–15.) Like the Barbados hotel, Defendant Harris corresponded with Plaintiff through multiple different channels to provide additional information and discuss the terms of the sale. Defendant

9

Harris discussed the Landis Grinder with Plaintiff on the phone (*id.* ¶ 12); Defendant Harris sent

Plaintiff a quote via e-mail (Klein Decl. Ex. B); the quote directed Plaintiff to financing options,

which Plaintiff pursued (*id.*; Compl. ¶¶ 16–19); Defendant Harris sent three additional e-mails

with photos of the Landis Grinder (Harris Decl. ¶ 13); and after the sale, Defendant Harris and

Mr. Klein exchanged e-mails regarding the grinder (*id.* ¶ 15). And like the Barbados hotel, which

knew that its patron lived in Pennsylvania, *see O'Connor*, 496 F.3d at 318, Defendants knew that

Plaintiff's office was in New Jersey. Defendant Harris' quote prominently featured Plaintiff's

New Jersey address. (Klein Decl. Ex. B.) These contacts suggest that Defendants should

reasonably have anticipated being haled into court in New Jersey. *See Colvin*, 417 F. App'x at

187 (concluding that specific jurisdiction existed where the plaintiffs booked a vacation, the

defendant resort owner engaged in communications "for the purpose of forming an agreement,"

and the defendant sent the plaintiffs a letter following the trip). Therefore, just as the contacts in

*O'Connor* constituted deliberate targeting of Pennsylvania, the contacts in this case constitute

deliberate targeting of New Jersey.

Defendants rely on a pre-*O'Connor* Third Circuit decision, *Toys "R" Us, Inc. v. Step

Two, S.A.*, 318 F.3d 446 (3d Cir. 2003) (Defs.' Br. at 12–14, ECF No. 12-5), but that case is

distinguishable from the present case. *Toys "R" Us* involved a trademark infringement allegation

arising out of two sales to New Jersey residents from the defendant's website. 318 F.3d at 450.

Both New Jersey purchasers received an e-mail from the defendant confirming their purchases.

*Id.* One of the purchasers exchanged e-mails with an employee of the defendant and received the

defendant's e-mail newsletter. *Id.* The Third Circuit concluded that the plaintiff had not yet

satisfied its burden of demonstrating personal jurisdiction and directed the parties to engage in

jurisdictional discovery. *Id.* at 455, 458. In *Toys "R" Us*, the sales to New Jersey residents were

orchestrated by the plaintiff, and "it appear[ed] that the defendant scarcely recognized that sales with U.S. residents had been consummated." *Id.* at 454. By contrast, Defendants in this case orchestrated the sale to Plaintiff, engaged in more extensive communications than the defendant in *Toys "R" Us*, and recognized that they were consummating a sale with a New Jersey corporation. Therefore, the Court concludes that Defendants "purposefully directed [their] activities" toward New Jersey. *See O'Connor*, 496 F.3d at 317.

3.    "Arise out of or Relate to" Requirement

In the Third Circuit, the "arise out of or relate to" requirement of specific personal jurisdiction "requires a closer and more direct causal connection than that provided by the but-for test," but "there is no specific rule susceptible to mechanical application in every case." *Colvin*, 417 F. App'x at 187 (quoting *O'Connor*, 496 F.3d at 323). "The inquiry is fact-sensitive, and should 'hew closely to the reciprocity principle upon which specific jurisdiction rests.'" *Id.* (quoting *O'Connor*, 496 F.3d at 323).

This litigation arises out of or relates to Defendants' activities in New Jersey. As an initial matter, Plaintiff has established but-for causation for purposes of personal jurisdiction: but for Defendants' correspondence with and sale to Plaintiff, Plaintiff would have no factual basis for its claims. Beyond the but-for test, Plaintiff's claims are tightly linked to the precise actions that constitute purposeful availment in this case. *See Colvin*, 417 F. App'x at 187 (explaining that the defendant communicated with the plaintiffs via fax to form a contract, which imposed obligations that formed the basis of the plaintiffs' claims); *Gerald Chamales*, 557 F. Supp. 2d at 499 (concluding that fraud and misrepresentation claims arose out of or related to the negotiations in which the alleged misrepresentations were made). Therefore, Plaintiff has satisfied the Third Circuit's second requirement for specific personal jurisdiction.

4.      "Fair Play and Substantial Justice" Requirement

Factors that courts consider in assessing the third requirement of specific personal jurisdiction include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, [and] the interstate . . . judicial system's interest in obtaining the most efficient resolution of controversies." *Burger King*, 471 U.S. at 477 (citation and internal quotations omitted). "The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *O'Connor*, 496 F.3d at 324 (quoting *Burger King*, 471 U.S. at 477).

Defendants do not address these factors in their Motion, but the Court concludes that the exercise of jurisdiction in this case comports with fair play and substantial justice. Any burden borne by Defendants in litigating this case in New Jersey would not violate due process. "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 114 (1987). Moreover, "New Jersey has an interest in providing effective means of redress when foreign corporations 'reach into the state' and transact business with its citizens." *Colvin*, 417 F. App'x at 188 (citing *O'Connor*, 496 F.3d at 325). And Plaintiff has an interest in obtaining convenient relief. For the foregoing reasons, the Court concludes that it has specific personal jurisdiction over

Defendants.[2] The Court proceeds to consider Defendants' request to transfer this case under 28 U.S.C. § 1404(a).

## II.      Transfer

*Jumara*'s private interest factors weigh in favor of litigating this case in New Jersey. On the one hand, Defendants prefer litigating this case in Texas, Defendant HMT's e-mails were sent from Texas, and Defendants may need to travel to New Jersey throughout the course of this litigation if their Motion is denied. On the other hand, Plaintiff's original choice of venue was New Jersey, the Landis Grinder was eventually shipped into New Jersey, there is no indication that witnesses may be unavailable for trial in New Jersey, and there is no evidence that relevant books and records are likely to predominate in Texas. On balance, these factors weigh in favor of litigating this case in New Jersey.

The public interest factors also do not favor a transfer. On the one hand, Defendant Harris' quote stated that the sale was to be governed by Texas law. (Klein Decl. Ex. B.) On the other hand, New Jersey has an interest in deciding local controversies at home, particularly when they arise out of foreign corporations' transactions with New Jersey citizens or corporations. These competing considerations do not suggest that a transfer is warranted. Even when analyzed in the light most favorable to Defendants, they favor neither forum over the other. Therefore, the

---

[2] A "slightly refined" version of the traditional minimum contacts test applies to intentional tort claims. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 n.2 (3d Cir. 2007) (citing *Calder v. Jones*, 465 U.S. 783 (1984)). In *Calder*, the Supreme Court recognized that a court may have personal jurisdiction over a non-resident defendant that commits an intentional tort where the effect of the tort is "felt" primarily within the forum state. 465 U.S. at 789–90. This is known as the "effects test." *Id.* Plaintiff maintains that Defendants are subject to personal jurisdiction under *Calder*. (*See* Opp'n at 11–15, ECF No. 15.) Because the Court has determined that it has personal jurisdiction over Defendants under the traditional minimum contacts standard, it need not also assess personal jurisdiction under this alternative test.

Court denies Defendants' request to transfer this case under 28 U.S.C. § 1404(a).

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer (ECF No. 12) is denied. An appropriate Order will follow.


Date: <u>October 30, 2020</u>                                    <u>/s/ Anne E. Thompson</u>
                                                                                ANNE E. THOMPSON, U.S.D.J.

14